UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KEVIN JAMES BRAY, SR.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. ED CV 17-1385-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

I.

## PROCEEDINGS

Plaintiff filed this action on July 11, 2017, seeking review of the Commissioner's[1] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

to proceed before a Magistrate Judge on August 3, 2017, and August 4, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on April 26, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born on October 16, 1969. [Administrative Record ("AR") at 21, 266.] He has past relevant work experience as a security guard, cook helper, and material handler. [AR at 30-31, 79.]

On December 31, 2013, plaintiff protectively filed an application for SSI payments, alleging that he has been unable to work since July 21, 2012.[2] [AR at 21, 266-71.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 185-87.] A hearing was held on September 23, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 41-88.] A vocational expert ("VE") also testified. [AR at 78-86.] On December 29, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability since December 31, 2013, the date the application was filed. [AR at 21-32.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 227-28.] When the Appeals Council denied plaintiff's request for review on May 18, 2017 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

/

---

[2] On January 26, 2011, plaintiff had previously filed an application for SSI and, on July 20, 2012, a different ALJ determined that plaintiff was not disabled because he was capable of performing past relevant work and other work. [AR at 21 (citing AR at 118-25).] The ALJ in this action found that there had been a showing of a changed circumstance material to the determination of disability and that the presumption of continuing nondisability had been rebutted. [AR at 21 (citing Soc. Sec. Acquiescence Ruling 97-4(9)).] Accordingly, she did not give res judicata effect to the July 20, 2012, findings of the previous ALJ. [Id.]

2

## III.
## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

/

/

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2013, the application date. [AR at 24.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical spine and lumbar spine; peripheral neuropathy of the lower left extremity, status post gunshot injuries; and affective disorder. [AR at 24.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 416.967(b),[4] as follows:

> [H]e is limited to occasionally lifting and carrying 20 pounds and frequently 10 pounds. He can sit, stand and walk for up to six hours each in an eight-hour day. He should never be required to walk on uneven terrain. He is limited to occasional use of left foot controls. He is limited to frequent bilateral overhead reaching with the upper extremities. He can never climb ladders and scaffolds, or crawl. He is limited to occasional balancing and climbing of ramps and stairs; he can frequently stoop, kneel, and crouch. He should not be exposed to unprotected heights. He should be limited to implementing simple one to two-step instructions. He . . . can respond appropriately to supervisors on a frequent basis. He can respond appropriately to co-workers on an occasional basis and should have occasional public contact.

[AR at 26.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a security guard, cook helper, and material handler. [AR at 30-31, 79-80.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

in the national economy that plaintiff can perform, including work as a "toy assembler" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 731.687-034), a "bench assembler" (DOT No. 706.684-042), and an "inspector hand packager" (DOT No. 559.687-074). [AR at 32, 80.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since December 31, 2013, the date the application was filed. [AR at 32.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) discounted the opinion of consultative psychiatric examiner, Ernest A. Bagner III, M.D.; (2) found plaintiff can perform the jobs of toy assembler, bench assembler, and inspector hand packager; and (3) failed to properly consider the third-party Function Report completed by Latoshi Young, plaintiff's longtime friend. [JS at 3.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

A.  **MEDICAL OPINIONS**

1.  **Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009); <u>see also</u> 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." <u>Lester</u>, 81 F.3d at 830; <u>Garrison</u>, 759 F.3d at 1012 (citing <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008)); <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining

physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. Dr. Bagner's Opinion

On March 19, 2014, Dr. Bagner, the consultative psychiatric examiner, conducted a complete psychiatric evaluation of plaintiff. [AR at 420-24.] Dr. Bagner noted that plaintiff, who

was shot in 2010 and underwent two surgeries due to his injuries, complained of hearing voices, depression, crying spells, nervousness, helplessness/hopelessness, low motivation, nightmares, flashbacks, and trouble with his memory and concentration. [AR at 420.] He further observed that during the examination plaintiff's mood was depressed and he was tearful; he was tense and paranoid; he was partly cooperative; his body movements were slowed; his eye contact was minimal; his affect was appropriate and no psychomotor retardation was noted; he exhibited thought blocking; he had paranoid delusions and admitted to auditory hallucinations; he was alert and oriented; he was able to recall 3 out of 3 objects immediately, and 0 out of 3 after 5 minutes; he was not able to perform serial sevens or threes; he was only able to name one president; and he stated there are "4 days in a week" and "265 months [sic] in a year." [AR at 420-22.] Dr. Bagner also noted that plaintiff walked slowly with a wheeled walker, his posture was normal, and he was appropriately dressed and groomed. [AR at 420.] Dr. Bagner diagnosed plaintiff with Major Depressive Disorder with psychotic features, rule out post-traumatic stress syndrome ("PTSD"). [AR at 423.] Functionally, Dr. Bagner opined that plaintiff was mildly limited in his ability to: follow simple, oral and written instructions; and comply with job rules such as safety and attendance. [Id.] He found plaintiff to be moderately limited in his ability to: follow detailed instruction "due to difficulty focusing on task"; interact appropriately with the public, co-workers and supervisors due to "suspiciousness"; respond to changes in a routine work setting "due to nervousness"; and perform daily activities "due to his mental condition." [Id.] Dr. Bagner found plaintiff markedly limited in his ability to respond to work pressure in a usual work setting "due to emotional decompensation." [Id.] He stated that from a psychiatric point of view, plaintiff's prognosis was "poor without antipsychotic treatment," and that plaintiff was not capable of managing his own funds at that time. [Id.]

The ALJ gave partial weight to Dr. Bagner's assessment:

> [Dr. Bagner] personally observed and evaluated [plaintiff]. His assessment is generally supported by the findings of the evaluation. However, Dr. Bagner did not give adequate consideration to [plaintiff's] subjective complaints.

[AR at 29.]

/

Plaintiff contends that the ALJ failed to provide any specific and legitimate reason for rejecting Dr. Bagner's medical opinion regarding his functional limitations resulting from his severe mental impairments, including the finding that plaintiff was markedly limited in his ability to respond to work pressure. [JS at 4.] He argues that despite the ALJ's finding that Dr. Bagner did not give "adequate consideration" to plaintiff's subjective symptoms, the report includes a "History of Present Illness" section, which reflects plaintiff's complaints regarding his mental impairments. [Id. (citing AR at 420).] He further argues that the ALJ did not provide any explanation as to what further subjective complaints Dr. Bagner could have obtained that would have impacted Dr. Bagner's medical opinion. [Id.]

Defendant responds that Dr. Bagner's "moderate and marked language . . . was too imprecise to simply be inserted into the ALJ's RFC finding," and the ALJ properly "translated Dr. Bagner's medical opinion into a concrete administrative RFC finding, taking into consideration Dr. Bagner's work pressure concerns by limiting Plaintiff to work that required only simple work with only occasional contact with the public and co-workers." [JS at 5-6 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008)).] Defendant further submits that "Plaintiff had significant work experience as a security guard and cook . . . [and] Dr. Bagner opined Plaintiff not only capable of understanding simple instructions, but some detailed instructions as well, while also noting marked limitations to work pressure . . . [and] [t]he ALJ translated these limitations, and took the record as a whole into consideration when finding Plaintiff could perform simple work, reducing stress by finding only occasional co-worker and public contact." [AR at 6-7 (citations omitted) (footnote omitted).]

"Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."); Garrison, 759 F.3d at 1009.

Here, the reasons suggested by defendant for the ALJ's failure to mention Dr. Bagner's

marked work-pressure limitation were not among those provided by the ALJ in her decision. See Trevizo, 862 F.3d at 997 (citation omitted). In fact, the ALJ's RFC limitations to simple work and occasional co-worker and public contact appear to be based on the opinions of Dr. Bagner and the state agency consultants (whose opinions the ALJ also gave "partial weight" because they "did not adequately consider [plaintiff's] subjective complaints") that plaintiff was capable of performing tasks with simple one- to two-step instructions, and that he was moderately limited in his ability to interact appropriately with the public, co-workers and supervisors. [AR at 30, 146, 161, 423.] The record reflects that, based on plaintiff's moderate limitations in his abilities to interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the state agency consultants concluded that plaintiff should be limited to "*a low-stress setting* with no more than incidental contact with the general public, and no more than superficial interactions with prospective co-workers and supervisors." [AR at 146, 161 (emphasis added).] However, as with Dr. Bagner's marked limitation in responding to work pressure, the ALJ in her hypothetical to the VE also did not include the consultants' opinion that plaintiff should be limited to a "low-stress setting," or their more restrictive limitations regarding social interactions. Work pressure and/or a low-stress setting in the work-place logically encompass more than just social interactions in the work-place and simple tasks with one- to two- step instructions. Indeed, a review of the three occupations the ALJ determined plaintiff can perform reflects that even if they involve some limited social interactions, they might well involve fast-paced work or production quotas.[5] See, e.g., DOT No. 731.687-034 (toy assembler), DOT No. 706.684-042 (bench assembler), and DOT No. 559.687-074 (inspector hand packager); see Brink v. Comm'r of Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) (unpublished), affirmed by 599 F. App'x 657 (9th Cir. 2015) (unpublished) (noting that "repetitive, assembly-line work . . . might well require

---

[5] Such work might also be inconsistent with Dr. Bagner's finding that plaintiff has difficulty focusing on a task, as well as the state agency consultants' finding that plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods. [AR at 145, 161.]

extensive focus or speed"). Additionally, although defendant suggests that based on plaintiff's "significant work experience as a security guard and cook" he would be able to handle work stress or tasks involving more than one- to two-step instructions, plaintiff has not worked since he was shot in 2010 and what he was capable of prior to being shot is not necessarily reflective of his capabilities and limitations since that time.

Additionally, the *only* reason given by the ALJ for discounting the opinions of Dr. Bagner and the state agency reviewing physicians, i.e., that they failed to give adequate consideration to plaintiff's subjective complaints, is puzzling at best. Although the ALJ found that Dr. Bagner's assessment was "generally supported by the findings of his evaluation," the ALJ nonetheless appears to be suggesting that plaintiff's subjective symptom complaints -- had Dr. Bagner adequately considered them -- would generally reflect that plaintiff is *more* capable than determined by Dr. Bagner and the reviewing consultants. However, Dr. Bagner reported plaintiff's subjective symptom complaints as presented to him by plaintiff at the examination and, it appears to the Court, that consideration of those complaints, as well as *all* of plaintiff's subjective complaints as reflected in the record, would instead have led Dr. Bagner (and the state agency physicians) to an even *more restrictive* functional assessment in other assessed areas. This reason for discounting the opinions of Dr. Bagner has no reasonable basis and is not supported by sufficient evidence.

Based on the foregoing, the ALJ did not provide specific and legitimate reasons for failing to consider Dr. Bagner's conclusion that plaintiff was markedly limited in his ability to handle work pressures. Remand is warranted on this issue.

B.  **STEP FIVE**

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). The DOT is usually "the best source for how a job is generally performed." Pinto, 249 F.3d at 845. SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable

explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).[6] The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. Massachi, 486 F.3d at 1153. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, an ALJ must first determine whether a conflict exists, and if it does, she must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

According to the DOT, occupations with reasoning level 1 require the ability to "apply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered

---

[6] SSR 00-4p provides in relevant part:

When a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. . . .

. . . .

If the VE's . . . evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.

. . . .

When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p (emphasis added). SSR 00-4p similarly provides that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." Id. (emphasis added).

on the job." [DOT App. C.] In contrast, reasoning level 2 requires the individual to carry out "*detailed* but *uninvolved* written or oral instructions." [DOT App. C (emphasis added).] Although a limitation to simple repetitive tasks may be consistent with reasoning level 2, Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015), a limitation to one- to two-step instructions may not be consistent. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003-04 (9th Cir. 2015) (finding an apparent conflict between the claimant's RFC limitation to one- to two-step tasks and the three representative jobs the ALJ concluded she was capable of performing, each of which required reasoning level 2). The ALJ in Rounds confirmed at the outset of the VE's testimony that he would assume the VE's testimony "is based on [his] knowledge, education, training, and experience consistent with the DOT," unless the VE told him otherwise. Id. at 1003. The ALJ then concluded in his decision that the VE's testimony -- that the hypothetical individual with a limitation to one- to two-step tasks could perform reasoning level 2 occupations -- was consistent with the DOT, "and never directly addressed whether [the claimant's] limitation to one- to two-step tasks was consistent with jobs requiring Level Two reasoning and, if so, why." Id. Noting that the RFC limitation was worded in a similar fashion to the requirements for level 1 reasoning, the court rejected the Commissioner's argument that Rounds' inability to complete multi-step *tasks* "does not necessarily contradict the VE's opinion that [Rounds] has the ability to follow detailed *instructions*, as required in Level Two jobs." Id. The court then specifically noted that "[o]nly tasks with more than one or two steps would require 'detailed' instructions . . . [a]nd these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform." Id. The Ninth Circuit found, therefore, that there was an apparent conflict between the claimant's RFC limitation to one- to two-step tasks, and the demands of reasoning level 2. Id. at 1003. Because the ALJ had not recognized the apparent conflict, the ALJ had not asked the VE to explain the conflict and the Ninth Circuit remanded the matter for further proceedings. Id. at 1003-04. The court also found that the ALJ's failure to reconcile the apparent conflict was not harmless because he "did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks,' apparently to address her 'moderate' problems with memory and concentration." Id. at 1004.

Here, plaintiff contends that because the ALJ determined that he is limited to simple one- to two-step instructions, he is unable to perform any of the alternative work identified by the VE, because each of those occupations requires the ability to "carry out detailed but uninvolved written or oral instructions" at reasoning level 2. [JS at 8-10 (citing Rounds, 807 F.3d at 1003).] Defendant counters that this case can be distinguished from Rounds because here the VE "explained that his testimony was not necessarily based on just the DOT, but also 'on research as well as [his] own training and experience.'" [JS at 11 (quoting AR at 86).] Additionally, defendant argues that as in Rounds and Zavalin, the case on which Rounds relied, any error here was harmless because plaintiff "had at least a high school education, past semi-skilled work, and medical opinions that supported a finding he could perform reasoning level two work." [JS at 11, 12 (citing AR at 30-31, 309, 423).]

Defendant's arguments are not persuasive. When the ALJ asked the VE whether his testimony had been consistent with the DOT, the VE testified that the DOT does not address pushing and pulling and whether it is "with upper extremities, lower extremities, left or right, and it does not address use of an assistive device nor being, in essence off task because of additional break time." [AR at 86.] He then specifically stated that his "opinion and testimony *with respect to those factors*" was "based on research as well as [his] own training and experience." [Id. (emphasis added).] The ALJ never asked the VE to explain the apparent inconsistency between the three reasoning level 2 occupations and plaintiff's limitation to simple one- to two-step instructions. Additionally, defendant's argument that plaintiff's past work had been semi-skilled, and that he had "doctors" who opined he was capable of following "even some detailed instructions" [JS at 12 (citing AR at 423 (Dr. Bagner's opinion that plaintiff's ability to follow detailed instructions was "moderately limited due to difficulty focusing on task"))] and supported a finding that he could "perform reasoning level two work" [id. (citing AR at 423)], overlooks the very basic facts that the ALJ determined plaintiff could not perform his past relevant work and was limited to unskilled work, and did *not* include any ability to follow detailed instructions in the RFC assessment, finding instead that plaintiff was *limited* to simple one- to two-step instructions. The Court cannot find, therefore, that the ALJ's error was harmless.

Remand is warranted on this issue.

**C.  LAY WITNESS**

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The Ninth Circuit has held that "regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition." Id. (citing Valentine, 574 F.3d at 694 (internal quotation marks omitted)); see also Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members." (citation omitted)).

In this case, on February 11, 2014, plaintiff's friend, Latoshi Young, completed a third-party Function Report ("Report"). [AR at 321-29.] Among other things, Ms. Young indicated that plaintiff, who lives with her, experiences chronic back pain, hears voices, and walks with a walker "at all times." [AR at 321.] She stated that she gives him his medication, prepares his food, and assists with his hygiene; he can use the microwave but not the stove; he is unable to do any chores; he "is scared and he's paranoid that he will be shot again" and so does not want to leave the house; he used to have a lot of friends but now does not want to be around people; he is unable to drive because of his pain; he is unable to pay bills because he "can[']t count that well"; he gets upset when there are changes in his routine; and the voices that he hears are "getting worse." [AR at 321-27.] Ms. Young also stated that plaintiff "is unable to work due to the chronic back pain." [AR at 321.]

The ALJ gave "little weight" to Ms. Young's Report:

> [Plaintiff's] friend is not a medical professional. As a lay witness, she is not competent to make a diagnosis or argue the severity of [plaintiff's] symptoms in relationship to his ability to work. I give some weight to this assessment to the extent it is consistent with the objective evidence.

15

[AR at 29.]

Plaintiff contends that the ALJ did not provide germane reasons for discounting Ms. Young's testimony. [JS at 13.] He notes that "established case law clearly holds that a lay witness need not be a medical professional in order to provide probative observations about a claimant's symptoms and daily activities." [JS at 14.]

Defendant responds that the ALJ gave appropriate reasons for "not giving weight" to the Report. [Id.] Defendant observes that "Ms. Young and Plaintiff's statements were nearly identical," and the Report "fails to provide new information for the ALJ's consideration." [JS at 14-15.] Therefore, defendant argues, the Report can be rejected for the same reasons the ALJ rejected plaintiff's subjective symptom complaints. [Id.] Defendant also asserts that the ALJ "expressly gave [Ms. Young's statements] little weight because they were *inconsistent* with the objective evidence." [JS at 15 (citing AR at 29).] Defendant points out that the ALJ explained how allegations that plaintiff could not stand and needed a walker since 2010 were not supported by the medical records, which "'demonstrate no evidence that a walker is medically necessary.'" [Id. (citing AR at 27).] Defendant then also points to medical records that reflect that plaintiff was not a candidate for surgery, and x-rays and examinations that "routinely showed unremarkable or negative findings." [Id. (citing AR at 27, 362, 368, 390, 405).]

The ALJ's finding that because Ms. Young is "not a medical professional" she is, therefore, "not competent to make a diagnosis or argue the severity of [plaintiff's] symptoms in relationship to his ability to work" is not a germane reason for discounting her testimony. [AR at 29.] Lay witnesses are not required to have medical training, or to provide exact details of their observations. That is what makes them "lay" witnesses. Discounting the "accuracy" of a lay witness' statement because the witness is not medically trained would allow an ALJ to reject most such statements for this reason alone. And, the fact that the questions of whether an individual suffers from certain impairments (such as paranoia), or is disabled and unable to work as a result of his impairments are issues reserved to the Commissioner, means that this reason for discounting the Report is merely a re-statement of the law, and not, by itself, a "germane reason" to discount Ms. Young's statements and observations. Here, although Ms. Young described

16

plaintiff as "paranoid," she did so not as a diagnosis, but in connection with her observations of his fear that he will be shot again if he leaves the house, that he is afraid of people wearing black hoodies, and that he does not want to be around people. [AR at 321, 325.] Indeed, she offered these observations in a succinct and straight-forward manner and did not represent that she was offering any sort of medical opinion. Although Ms. Young did surmise that plaintiff "is unable to work" due to his chronic back pain, hearing voices, and use of a walker, and the ALJ was free to reject her opinion that these conditions rendered him disabled and unable to work, the more salient points made by Ms. Young were that, based on her daily observations, plaintiff experiences chronic back pain, hears voices, and walks with a walker. [AR at 321.]

Nor are defendant's arguments that the ALJ provided reasons germane to the witness any more persuasive. First, defendant's argument by implication that the ALJ rejected Ms. Young's Report because they were "nearly identical" to plaintiff's statements, was not a reason given by the ALJ for rejecting the Report. Again, this Court will not affirm the decision of an ALJ on a ground that the ALJ did not invoke in making her decision. Second, defendant argued that the ALJ properly discounted Ms. Young's Report because the objective evidence *failed* to support her statements. The ALJ, in fact, actually stated that she *credited* Ms. Young's statements "to the extent [they are] consistent with the objective evidence." [AR at 29.] However, the ALJ did not provide any explanation or description of the specific evidence that she found to be consistent (or inconsistent) with Ms. Young's statements. And, although defendant relies in part on the ALJ's statement that the record did not reflect plaintiff's need for a walker since 2010, that statement itself is not supported by substantial evidence. Indeed, the previous July 20, 2012, decision denying plaintiff's application for disability, which relied on earlier medical records than those presented to this Court (which consist primarily of medical records subsequent to the 2012 decision), reflects that when he was discharged from the hospital after he was shot, plaintiff was discharged with a walker, his hearing testimony was consistent with that fact, and his 2011 records from Arrowhead Regional Medical Center also reflected that he continued to use a walker to ambulate. [AR at 50, 122, 123.] Further, the records before this Court reflect that plaintiff regularly used a cane or a walker to ambulate [AR at 399, 403, 406, 407, 409 ("Antalgic gait";

"walks [with] cane"); 415], and that on May 9, 2013, his treating provider indicated a "walker referral" / "DME [durable medical equipment] referral." [AR at 406.] Thus, contrary to the ALJ's finding that there was no indication "that a treating provider recommended a walker," the record indeed reflects that referral. More importantly, a lack of support from the "overall medical evidence" is also not a proper basis for disregarding a lay witness' observations. Diedrich v. Berryhill, 847 F.3d 634, 640 (9th Cir. 2017) (quoting Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone "is precisely why such evidence is valuable at a hearing." Id. (citing Smolen, 80 F.3d at 1289 (holding that ALJ erred where the ALJ rejected the testimony of claimant's family members about claimant's symptoms because the medical records did not corroborate those symptoms)). Thus, to the extent the ALJ determined that the Report should be discounted based on a lack of support from the medical records, this was not a germane reason to give "little weight" to Ms. Young's observations.

Based on the foregoing, the ALJ did not provide germane reasons for discounting Ms. Young's statements. Remand is warranted on this issue.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination

can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Bagner, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Bagner. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ on remand shall also reconsider the lay witness testimony and provide legally sufficient reasons germane to each witness if the ALJ determines that his or her testimony should be disregarded. Third, based on the ALJ's reassessment of the lay witness testimony and the medical evidence of record, the ALJ shall consider any *additional* or *more limited* RFC limitations (e.g., ability to handle work pressure or stress at work; difficulty in attention, concentration or pace; ability to interact with supervisors, co-workers, and the public; or need for an assistive device to ambulate),[7] resulting from plaintiff's physical and mental impairments.[8] Because plaintiff's RFC includes a limitation to "simple one to two-step instructions," the ALJ must determine, with the assistance of a VE, whether this RFC limitation conflicts with the job requirements for the alternative toy assembler, bench assembler, and/or inspector hand packager occupations. If the VE opines that a person with plaintiff's RFC is unable to perform these alternative positions, the ALJ shall determine, at step five, with the assistance of the VE, whether there are other jobs existing in significant numbers in the national economy that plaintiff can still perform. See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

/

/

---

[7] These examples are for illustrative purposes only and are not intended to suggest that these (or any other) limitations are supported by substantial evidence in the record.

[8] Nothing in this decision is intended to disrupt the ALJ's RFC determination that plaintiff is limited to no more than simple one- to two-step instructions, or her step four determination that plaintiff is unable to perform his past relevant work.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 19, 2018

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE